[No. 3896–II.   Division Two.   October 27, 1980.]

*In the Matter of the Marriage of* CAROL ANN HUTESON,
*Appellant, and* GERALD JAMES HUTESON,
*Respondent.*

*William H. Dunn,* for appellant.

*Douglas J. Bratt,* for respondent.

PEARSON, J.—This appeal from a decree of dissolution
brings in issue a fire fighter's disability pension which the

trial court characterized as separate property of respondent Gerald James Huteson. Petitioner Carol Ann Huteson contends the pension was community property with an actuarial value of $101,531, and that distribution of the assets of the parties was inequitable as to her when she was awarded no interest in the pension.

Before reciting the facts, we point out that characterization of property as community or separate is not necessarily controlling in the distribution of property in a dissolution. The essential consideration is whether the final division of property is fair, just, and equitable under all the circumstances. *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966); *In re Marriage of Kittleson,* 21 Wn. App. 344, 585 P.2d 167 (1978). Nevertheless, in this case we hold the court's characterization of the pension as respondent's separate property was correct and the division of the property was fair, just and equitable under the circumstances.

The parties were married in 1967. Petitioner was age 31 and respondent age 33 at the time of the dissolution. The parties have two young children. Mr. Huteson began work as a Vancouver fireman in 1973, and thus became a member of the Washington Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF), with a percentage of his salary deducted for a statutory disability and retirement plan.

The parties were separated permanently in December 1977, whereupon Mrs. Huteson filed a dissolution petition. In July 1978, Mr. Huteson suffered a heart attack and was placed on full disability. He had been employed for less than 5 years with the fire department, and thus did not have any vested retirement benefits. RCW 41.26.090. The disability benefits entitled him to his full salary of $1,562 per month for the first 6 months of disability and 60 percent of his monthly salary thereafter until such time as the disability would permit him to return to work as a fire fighter. RCW 41.26.120–.130. Mr. Huteson also received a monthly salary of $120 from the United States Army Reserve, which was not affected by his disability.

The parties had other net assets valued at $29,800. Mrs. Huteson was awarded $23,100 of their remaining assets, while Mr. Huteson was awarded property valued at $6,700. The trial court explained this division of the property in finding of fact No. 17:

This disproportionate distribution of the home equity takes into consideration the contribution of the marital community to the LEOFF system and the respective income earning ability of the parties.

The trial court denied Mrs. Huteson's claim for maintenance, finding that Mr. Huteson's income and debt rendered him incapable of paying maintenance. The trial court required Mr. Huteson to pay child support of $328 per month to Mrs. Huteson, who was awarded custody of the children. In these connections, the trial court found that if Mr. Huteson "resume[d] his firefighter duties, or he [became] employed in a non–firefighter capacity, he would be capable of paying substantially greater child support and alimony amounts."[1] Both issues were thus left open should a change of circumstances warrant such reconsideration.

Finding of fact No. 16, challenged in connection with the disability pension, provided in part:

Respondent's disability income compensates him for loss of future income and is not a community asset to be divided on a present value or any other basis.

▮ The first issue deals with the correctness of this ruling characterizing the disability award as respondent's separate property. In this connection, it should be noted that the disability of respondent occurred some 7 months after the permanent separation and commencement of this dissolution action. The disability was an instantaneous occurrence affecting respondent's future earning ability only and the award contained no elements of deferred compensation. Thus the disability award is logically distinguishable from

---

[1] Mr. Huteson was studying to become an accountant at the time of trial. Mrs. Huteson was employed part time, earning $175 per month.

the retirement benefit, which is earned and thus acquired over a term of years by virtue of the labors of the employed spouse on behalf of the community. Under this analysis, the disability pension awarded as the result of a disability occurring after permanent separation should be characterized as separate property of the disabled spouse and should be considered, as the trial court did here, as affecting his ability to pay alimony and child support. In support of this analysis *see* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 758 n.135 (1974).

However, petitioner relies upon *Chase v. Chase,* 74 Wn.2d 253, 444 P.2d 145 (1968), where a department of our Supreme Court took a different view of the issue as it related to an optional disability insurance plan purchased through the husband's employer from a private insurer, the premiums of which were paid for by community funds. In *Chase,* as here, the parties had separated, with a divorce action pending when the husband suffered a disabling heart attack. The policy paid a lump sum disability settlement which the court characterized as community property, as the premiums had been paid with community funds. The court held the insurance was undisposed of community property and therefore equally owned by the former spouses.

While questioning both the logic and wisdom of *Chase,* we believe it is distinguishable from the case at bench. *Chase* involved a private optional insurance plan purchased voluntarily with community funds. The plan provided for a lump sum payment in the event of disability. Here the LEOFF system constitutes an involuntary statutory plan designed to enable "such employees to provide for *themselves and their dependents* in case of disability or death". (Italics ours.) RCW 41.26.020. The statute itself characterizes the award in terms of future earnings and dependency. Only to the extent that Mrs. Huteson might be considered a "dependent" would the legislative purpose of the statute give her any interest in the award. Thus we believe the trial court's characterization of the disability award was fully

consonant with, if not required by, RCW 41.26.020. Such characterization is also consonant with RCW 26.16.140, which requires characterization of property as separate if acquired after separation.

But perhaps the most compelling argument favoring a separate property characterization is that disability payments acquired before the disabled spouse has earned a vested right to retirement benefits are designed to compensate solely for loss of future earnings. To treat such disability payments as a community asset would unfairly and permanently burden those future earnings to the same extent as would an award of permanent alimony. We believe such disability payments should not be considered a community asset subject to division in a dissolution proceeding. *In re Marriage of Jones,* 13 Cal. 3d 457, 531 P.2d 420, 119 Cal. Rptr. 108 (1975).

We acknowledge that if the disability pension serves as a form of deferred compensation for past services or is taken in lieu of a vested retirement benefit, circumstances may call for a different characterization. *In re Marriage of Kittleson, supra.* We agree with *Kittleson* that

[a]n inflexible rule that required a disability pension to be classified as separate property would ignore the fact that some "disability" pensions step into the place of a regular retirement pension . . . yet other awards are made for disability alone.

21 Wn. App. at 353. Here there are no retirement elements involved in the disability award except for the possibility that respondent may, in the future, return to his fire fighter's duty and vest a retirement benefit. We believe the trial court adequately covered this somewhat remote community interest by awarding Mrs. Huteson substantially greater amounts of the community property and by leaving the alimony question open in the event Mr. Huteson should return to work as a fire fighter.

In sum, we hold the court was correct in holding respondent's postseparation disability award to be his separate property under the circumstances of this case, *i.e.,* where

the award had no substantial elements of either deferred compensation or retirement.

As we stated initially, the ultimate question, regardless of how the property is characterized, is whether the final division of the property is fair and equitable under the circumstances. *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977). We are unable to find that the trial court's exercise of discretion was "clearly untenable or manifestly unreasonable" under the circumstances of this case. *Friedlander v. Friedlander,* 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

Mrs. Huteson received over three–fourths of the community property, with an adequate award for child support. The questions of alimony and child support are both open if future circumstances warrant. Mr. Huteson is totally disabled and has a substantial child support obligation as well as a potential future alimony obligation. In our view, the division of property was neither untenable nor unreasonable.

Affirmed.

REED, C.J., and PETRICH, J.,concur.