[No. 10336–6–III.  Division Three.  April 25, 1991.]

*In the Matter of the Marriage of* DONNA L. KRAFT, *Respondent, and* BRYCE A. KRAFT, *Appellant.*

46

*Allen M. Gauper* and *Salina, Sanger & Gauper,* for appellant.

*Chris A. Montgomery* and *Montgomery Law Firm,* for respondent.

SHIELDS, A.C.J.—Bryce Kraft appeals the property distribution and postmajority support provided by the dissolution decree ending his marriage to Donna Kraft. He alleges the court (1) erred as a matter of law by treating the disability portion of his military retirement pay as a divisible asset, (2) abused its discretion in dividing the parties' property, and (3) erred by imposing postmajority support for their college bound son on Mr. Kraft only. We reverse and remand.

Bryce and Donna Kraft were married September 23, 1967. They had two children, Troy, 18, and Karen, 15; both remained with Mrs. Kraft at the parties' residence after the parties separated on March 19, 1988. Troy had been accepted at Eastern Washington University for entrance in

the fall of 1989. Mr. Kraft moved into a hunting cabin without water, electricity or telephone.

At the time of trial, Mrs. Kraft was employed as a counselor; Mr. Kraft was retired from the military and supplemented his retirement income by caring for an elderly man. He had accumulated credit for 21 years of service, during 14 of which the parties were married. Mr. Kraft suffers from several physical disabilities, has a disability rating of 50 percent, and waives 50 percent of his retirement pay to receive disability benefits.

The court found[1] Mrs. Kraft's *net* monthly earned income is approximately $1,700. She also receives monthly rent on the parties' Alabama residence which was awarded to her. The net income averages $200 after deducting mortgage payments, management fees, and expenses from the rent of $435. The court found Mr. Kraft received military benefits in the *gross* amount of $1,317, one–half of which represented retirement benefits and one–half disability benefits, and average *net* income of $500 from his caretaking job. The court then deducted $200, representing Mrs. Kraft's community one–half interest in two–thirds of the military retirement benefits and added that sum to her income. Thus, Mrs. Kraft's monthly income was determined to be $2,100 and Mr. Kraft's, $1,600. The court used these figures to determine support for the minor daughter.

The court found Mr. Kraft had received disability pension overpayments totaling approximately $21,000. When Mr. Kraft left the military in 1972, he began receiving disability pay. He went back on active duty in 1976, but continued receiving the disability pay, resulting in the overpayment. As best we can determine from the record, when the overpayment was discovered in 1987, Mr. Kraft agreed to repay the debt to the Veterans Administration (VA) at the rate of $70 per month. When he elected to

---

[1]The findings as to amounts of income and the value of assets are contained in the court's oral opinion. They are not all contained in its written findings of fact.

waive retirement pay to receive disability benefits, then computed at 40 percent, the government began deducting the entire amount of the disability portion of his monthly checks to repay the VA. At trial, it was revealed Mr. Kraft's disability rating had been increased to 50 percent; presumably, that would increase the amount of the monthly deduction.

The court also found the Krafts were indebted to: Rainier Bank in the amount of $1,800; their son in the amount of $3,500; their daughter in the amount of $1,200; and Mrs. Kraft's father in the amount of $1,000. The court then allocated the property as follows:

To Mrs. Kraft:

| | | |
|---|---|---|
| Colville house and acreage | $126,000 | subject to $60,000 mtg. |
| Alabama house and acreage | 55,000 | subject to 16,000 mtg. |
| Furniture & appliances | 7,000 | |
| Her IRA | 8,000 | |
| Her own pension | 3,000 | |
| 1979 Volvo | 2,500 | |
| Woodworking tools | 1,500 | |
| Various items not valued | | |
| Gross total | $203,000 | Net total $127,000 |

To Mr. Kraft:

| | | |
|---|---|---|
| His IRA | $9,000 | |
| Ford tractor | 800 | |
| 1976 Mercedes | 2,500 | |
| His tools | 1,000 | |
| His guns | 1,000 | |
| Various items not valued | | |
| Gross total | $14,300 | Net total $14,300 |

Based on the testimony of Mrs. Kraft's expert, the court determined the present value of Mr. Kraft's entire military pension to be $247,553; one–half was disability benefits and two–thirds of the remaining half was community property. The court allocated the military benefits as follows: to Mrs. Kraft, one–third of the retirement benefits, rounded to $41,300; and to Mr. Kraft, two–thirds of the retirement benefits, rounded to $82,600, and his disability benefits, rounded to $123,800.

Finally, the court allocated the other debts as follows: Mrs. Kraft would pay the mortgages on the real property; $1,800 to Rainier Bank; $1,750 to her son; $600 to her daughter; and $1,000 to her father. Mr. Kraft would repay the VA $21,000; $1,750 to his son; and $600 to his daughter. The court tallied the net distribution: "he'd roughly receive $200,000.00; she, roughly $162,000.00, by my calculations." Actual calculations result in: Mr. Kraft, $197,350, and Mrs. Kraft, $163,150.

█ Mr. Kraft first contends the court erred by considering the disability portion of Mr. Kraft's military retirement pay as a divisible asset. State courts may not treat military retirement pay, waived by the retiree in order to receive veterans' disability benefits, as property divisible upon dissolution. *Mansell v. Mansell,* 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023, 2031 (1989). The court erred in establishing a value for Mr. Kraft's military benefits and then awarding to him "His disability pension, $123,800.00." In effect it was distributed as an asset.

Even before *Mansell,* under Washington law Mr. Kraft's disability benefits were in the nature of compensation for loss of future wages and should be considered to be Mr. Kraft's individual[2] property. *See In re Marriage of Anglin,* 52 Wn. App. 317, 320–25, 759 P.2d 1224 (1988). Such compensation for loss of future wages is not an asset which can be used to offset other assets, but should only be considered as affecting Mr. Kraft's ability to pay spousal maintenance or child support. It is clear from *In re Marriage of Huteson,* 27 Wn. App. 539, 541–43, 619 P.2d 991 (1980) that loss of future income is not a community asset to be divided on a present value or any other basis.

---

[2]To characterize the loss as a "separate" asset in this context is confusing. In its usual context, separate property is also subject to division upon dissolution. It clarifies matters if the word "individual" is used. To the extent that disability payments, which represent lost earning capacity, are made during marriage, they are community income when received; payments made after dissolution would be separate income when received. In either event, the right to receive income as a chose in action is individual to the recipient.

■ Mr. Kraft next contends the court abused its discretion in dividing the parties' assets and liabilities. In making a just and equitable distribution, although there are numerous factors to consider, "it is the economic condition in which the decree will leave the parties that engenders the paramount concern in providing for child support and alimony and in making a property division." *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 408, 433 P.2d 209 (1967).

■■ The trial court has considerable discretion in making a property division, and will not be reversed on appeal absent a showing of manifest abuse. *In re Marriage of Tower,* 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied,* 114 Wn.2d 1002 (1990). However, discretion exercised on untenable grounds constitutes manifest abuse. *Tower,* at 700.

Eliminating the disability benefits from the equation results in a disproportionate net of $163,150 for Mrs. Kraft and $73,550 for Mr. Kraft. The court offset the "award" of preempted disability benefits to Mr. Kraft by awarding Mrs. Kraft the greater part of the parties' assets. The distribution was thus based upon untenable legal grounds.

■ The distribution is further distorted in this case because the parties purported to establish a present value for Mr. Kraft's military retirement benefits. Because the pension was in pay status, that was unnecessary. The pension itself can be divided. State courts have specific authority under the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408(c)(1), to treat disposable military retirement pay as community property, with various limitations. *See In re Marriage of Bocanegra,* 58 Wn. App. 271, 277, 792 P.2d 1263 (1990), *review denied,* 116 Wn.2d 1008 (1991); *In re Marriage of Haugh,* 58 Wn. App. 1, 8, 790 P.2d 1266 (1990). "Disposable" retirement pay is defined by the statute as the total monthly pay to

which a retiree is entitled, minus amounts owed to the United States, deducted for federal employment taxes, withheld for income taxes, and deducted for other purposes such as government life insurance premiums. *See* 10 U.S.C. § 1408(a)(4)(A)–(F).

In the present case, the $21,000 overpayment of disability benefits received during marriage is being deducted directly from Mr. Kraft's monthly checks. His income should have been adjusted to reflect the disability income deduction, and the deductions listed in the statute, from his military retirement pay. No error was actually assigned to the court's computation of income; however, Mr. Kraft's net retirement income after deducting Mrs. Kraft's one–third would be $526.80 (two–thirds of $790.21 disposable retirement pay).

The court may award, as a direct payment from the military, up to 50 percent of the disposable retirement pay to the former spouse.[3] 10 U.S.C. § 1408(e)(1); *see Mansell,* 490 U.S. at 585. The court order must specifically provide for the payment of an amount, expressed in dollars or as a percentage, from the disposable pay of the retiree to the former spouse. 10 U.S.C. § 1408(a)(2)(C). The order must also be properly served on the Secretary of the relevant military department. 10 U.S.C. § 1408(b); *Mansell.* This direct payment mechanism ensures the former spouse is paid directly by the military and later increases or decreases in retirement benefits are reflected in each share

---

[3]While the court may actually award more than 50 percent of a former spouse's disposable retirement pay, it may not require direct payment by the military of more than that amount to the retiree's former spouse. *See Haugh,* at 12; *Bocanegra,* at 280. Here, Mrs. Kraft's community property share is 33⅓ percent of the disposable retirement pay.

In addition, direct community property payments are limited to former spouses who were married to a military member for 10 years or more, during which the member performed at least 10 years of service creditable toward retirement. 10 U.S.C. § 1408(d)(2). During the Krafts' 21 years of marriage, Mr. Kraft accumulated 14 of his 21 years of service.

(if a percentage is designated in the court's order).[4] Disregarding both the value of the military retirement pay and the debt to the VA, and removing them from the equation, results in a practical approach to the distribution of assets. In the present case, the failure to do so resulted in an actual distribution to Mrs. Kraft of net assets worth $121,850, and to Mr. Kraft of net assets worth $11,950. That is clearly not a just and equitable distribution.

Finally, Mr. Kraft contends the court erred by imposing a postmajority support obligation on him for his son's college education. He argues it is not appropriate and should not be ordered if it works a significant hardship on the parent. *See Childers v. Childers,* 89 Wn.2d 592, 600–01, 575 P.2d 201 (1978). He further argues it is an abuse of discretion for the court to order him to pay postmajority support, which subjects him to contempt proceedings if he fails to pay, while allowing Mrs. Kraft to make voluntary contributions.

We need not address this issue because upon remand and recomputation Mr. Kraft's income will be substantially different from that found by the trial court. Both postmajority support and support of the minor daughter will again have to be addressed. On remand we direct the court's attention to RCW 26.19.070 which requires the completion and filing of appropriate worksheets. *See In re Marriage of Sacco,* 114 Wn.2d 1, 3–4, 784 P.2d 1266 (1990).

---

[4]While each spouse is liable for income taxes on the portion each receives, the retired service member is subject to federal withholding on the entire amount. A credit is then available to the retiree for the tax withheld, but attributable to the former spouse. *See* 26 C.F.R. §§ 31.3401(a)–1(b)(1)(ii), 31.3401(a)–1(b)(5); I.R.C. § 31; *Haugh,* at 4 n.2.

Had this been a private pension subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, direct payment of pension benefits could be accomplished by the issuance of a qualified domestic relations order (QDRO). *See* 29 U.S.C. § 1056(d)(3)(A); I.R.C. §§ 401(a)(13)(B), 414(p)-(1)(B); 1 Washington State Bar Ass'n, *Family Law Deskbook* ch. 41 (1989).

We reverse and remand for redistribution of assets and recomputation of child support and postmajority support.

MUNSON and THOMPSON, JJ., concur.