[No. 27617-4-I.   Division One.   March 15, 1993.]

*In the Matter of the Marriage of* LINDA L. LELAND,
*Respondent, and* CARL ROBERT LELAND,
*Appellant.*

*Malcolm L. Edwards* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant.

*Richard H. Blacklow, Donald A. Mallett,* and *Mallett & Brown,* for respondent.

KENNEDY, J. — Robert Leland appeals the trial court's characterization of such disability payments as he may receive after he reaches the age of 65 as pension benefits to be divided equally with his former spouse Linda Leland. We affirm.

## FACTS

Robert and Linda Leland were married in July 1965. They separated in April 1989. Robert became fully disabled, as the result of a hereditary eye defect, in 1985. The defect is incurable and Robert's vision continues to deteriorate. He has been unemployed since 1985. He is not likely to become reemployed. He was 48 years old at the time of the trial.

During the marriage the parties purchased three disability insurance policies, using community funds to pay the premiums. At the time of trial, Robert was receiving a monthly income of $7,435, from the following sources:

$4,000   Prudential policy, payable for Robert's lifetime, so long as he remains disabled.

1,100   Massachusetts Mutual policy, payable until Robert is 65, so long as he remains disabled.

| 970 | Massachusetts Mutual policy, payable until Robert is 65, so long as he remains disabled. |
| 464 | Social Security payment for the parties' daughter Kari (age 13 at the time of trial). |
| 901 | Social Security disability income. |
| $7,435 | Total. |

Under current tax laws these monthly payments are tax free. The privately purchased insurance contracts do not provide for any increases for cost of living. All three policies contain premium waiver clauses while Robert remains disabled. All payments will cease at the time of Robert's death. Under the terms of the Prudential policy, had Robert become disabled after the age of 50, rather than before reaching that age, the payments would have ceased when he turned 65. Because he became disabled before the age of 50, the Prudential payments will continue for his lifetime, provided only that he remains disabled from all employment for which he is reasonably fitted by education, training and experience.[1]

Linda Leland was 47 years of age at the time of trial. She served primarily as a homemaker during most of the marriage. In 1986, after taking some courses at Bellevue Community College, she commenced a career as a real estate agent and earned $9,700 that year. In 1989, which was an exceptional year for real estate sales in the Seattle area, she earned $26,000. Linda intends to remain in real estate sales. The trial court found that she is "fully qualified to make a fair income in this pursuit." At the time of trial, Linda's net monthly income was $1,725.

The parties acquired certain real and personal community property having a net value of $280,000 at the time of trial. The trial court divided this property equally between the parties, noting that, if Robert had not been disabled and on

---

[1]Robert is a college graduate who is trained as a CPA and who operated several businesses prior to becoming disabled.

a fixed income, a disproportionate award in Linda's favor would have been justified.[2]

The court characterized all of Robert's privately purchased disability income to be received until he is 65 as "income replacement" in which the marital community has no interest.[3] To the extent that Robert may receive income under the Prudential policy after he turns 65, the court characterized the payments as "pension" income in which the marital community retains an interest. Linda was awarded 50 percent of all such "pension" payments, the payments to be divided on a monthly basis as Robert receives them.

Robert appeals, arguing that the monthly payments he may receive from Prudential after the age of 65 retain their character as disability income in which the marital community has no interest, as a matter of law. He also argues that, even if the trial court did properly determine that the post-age-65 disability insurance policy payments are in the nature of pension income, the trial court abused its discretion in awarding any portion to Linda.

## ARGUMENTS

We first examine the Washington case law upon which each party has relied in arguing his and her positions.

### Case Law Presented by Robert

In the case of *In re Marriage of Kraft*, 119 Wn.2d 438, 832 P.2d 871 (1992),[4] the issue was whether the trial court

---

[2]The court set the child support for Kari, who will reside primarily with her mother, at $1,300 a month in accord with the presumptive schedule. Linda was awarded spousal maintenance of $1,600 a month for 3 years. Robert was required to pay $7,500 toward Linda's attorney fees. Robert was also required to contribute toward the college education expenses of the parties' 21-year-old son Ryan, who had another year and a half to go for the completion of his college degree, as of the time of trial. The parents were made jointly responsible for the college education expenses of Kari and for Kari's continued attendance at the private school which she was attending at the time of trial.

[3]Linda has not cross-appealed this ruling. Accordingly, it is the law of the case in this appeal.

[4]The Court of Appeals decision in *Kraft* is found at 61 Wn. App. 45, 808 P.2d 1176 (1991).

properly applied *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), in its treatment of the husband's military disability pay as an asset of the community. In *Mansell* the United States Supreme Court ruled that, because the Uniformed Services Former Spouses' Protection Act excludes disability pay from "disposable retired or retainer pay",[5] the state courts may not treat military disability pay as property divisible upon divorce. In *Kraft*, the trial court reduced both the disability and the nondisability portion of Mr. Kraft's military pension to its present value and awarded Mrs. Kraft an offsetting share of the other available assets. Our State Supreme Court reversed the trial court, insofar as the disability pay had been treated as an asset, holding that it is improper under *Mansell* for a trial court to reduce military disability pay to present value for the purpose of awarding the nonretiree spouse a proportionally greater share of the community property. *Kraft*, 119 Wn.2d at 448.

In the case of *In re Marriage of Brown*, 100 Wn.2d 729, 675 P.2d 1207 (1984), the issue was whether a potential recovery in tort for a spouse's personal injuries suffered during marriage is to be characterized as community property at the time of a marital dissolution proceeding. In the early case of *Hawkins v. Front St. Cable Ry.*, 3 Wash. 592, 28 P. 1021 (1892), the court determined that a claim for personal injury to a married person by a third party tortfeasor is community property. The *Brown* court overruled *Hawkins* and its progeny, holding, instead, that such a claim is not community property as defined in RCW 26.16.030 because the claim is not property "acquired" during marriage.

> [W]e believe that the word "acquired" should be construed to encompass wages and other property acquired through the toil, talent, or other productive faculty of either spouse, but not compensation for personal injury. Such a construction is consistent with the basic principle that, except for gifts to the community, community property consists only of that which is acquired by onerous title, or in exchange for other community property.

(Citations omitted.) *Brown*, 100 Wn.2d at 737.

---

[5]10 U.S.C. § 1408(a)(4)(B) (1988).

The *Brown* court reasoned further that, if such a recovery in tort is not community property, it should partake of the same character as that which has suffered the injury or loss.

> Thus, damages for physical injury and pain and suffering, which compensate the injured spouse for the harm to his or her separate individuality, should be separate property. Damages for injury-related expenses should be community or separate according to which fund incurs the expenses. Similarly, damages for lost wages and diminished earning capacity should partake of the same community or separate character as the wages and earning capacity they are intended to reimburse or make whole.

*Brown*, 100 Wn.2d at 738.

Finally, Robert relies upon the case of *In re Marriage of Anglin*, 52 Wn. App. 317, 759 P.2d 1224 (1988). In *Anglin*, the issue was whether the husband's LEOFF 1[6] disability award was for lost future wages or whether the award was community property. The *Anglin* court noted that, under RCW 41.26.120, the disability allowance was available regardless of vesting.[7] Unlike a retirement benefit, a LEOFF 1 disability award is subject to periodic review. Until the disabled employee is 50, he or she is subject to periodic medical examinations to determine whether the disability continues. After age 50, the medical examinations cease, and the disabled employee will then receive disability benefits or retirement benefits, whichever is greater, for the remainder of his or her lifetime. RCW 41.26.130.

Because Mr. Anglin was under the age of 50, the court held that the disability award was based solely on his disability, rather than being in the nature of a retirement benefit. Accordingly, the benefit was for lost future (postdissolution) wages and was not a marital asset to be distributed by the trial court. That the parties had executed a statutory, 3-pronged community property agreement did not change the result, as such an agreement has no application to wages

---

[6]Law Enforcement Officers' and Fire Fighters' Retirement System Plan 1, governed, for purposes of *Anglin*, by former RCW 41.26.

[7]Mr. Anglin was fully vested in the system at the time of trial.

after a divorce, or to compensation in lieu of such postdissolution wages. *Anglin*, 52 Wn. App. at 324.

Robert argues that *Kraft*, *Brown* and *Anglin*, taken together, stand for the proposition that disability payments received after marital dissolution are the separate income of the disabled person, as a matter of law, and may not be divided as property in a dissolution proceeding, regardless of the source of such payments. Because the disability payments will end if Robert should overcome his disability and return to full employment, Robert also appears to argue that the future payments he may receive are a mere expectancy. In Washington law a mere expectancy does not rise to the level of a property right. *Freeburn v. Freeburn*, 107 Wash. 646, 182 P. 620 (1919).

The disability benefit in *Anglin* was a fringe benefit of employment during marriage and thus, Robert argues, it was acquired with community labor. Therefore, it should make no difference that the payments in this case were acquired by virtue of premiums paid with community funds. Robert also argues that the post-age-65 payments from Prudential share no attributes of a retirement plan which is, in Robert's words, "the equivalent of a savings plan where contributions are made during a person's work life to be repaid with accumulated earnings after a person retires." Brief of Appellant, at 14.

### Case Law Presented by Linda

In *Ross v. Pearson*, 31 Wn. App. 609, 643 P.2d 928, *review denied*, 97 Wn.2d 1030 (1982), a divorced wife sought partition of the disability payments which her former husband was receiving at the time of the divorce. During marriage, the parties contracted for disability insurance on the husband through Crown Life and Safeco Insurance Companies. During marriage, the husband became permanently disabled and began to receive monthly payments. In 1977 the parties were divorced. The decree failed to dispose of the disability payments. In 1979, the wife sought to receive half of the payments which had been received by the husband

during the period since the divorce and half of all future payments. The trial court so decreed. This court affirmed, relying upon *Chase v. Chase*, 74 Wn.2d 253, 444 P.2d 145 (1968). In *Chase*, the Supreme Court wrote:

> Insurance proceeds in this state are property and not mere expectancies or choses in action, and, if the premiums are paid with community funds, the insurance proceeds are community property.

*Chase*, 74 Wn.2d at 257.

In *Ross v. Pearson*, *supra*, this court wrote: "The disability insurance is a matter of contract." 31 Wn. App. at 612. The marital community's property right in the disability payments arose from its contractual right to enforce the terms of the policy.[8]

In *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 689 P.2d 46 (1984), the Supreme Court held that the character of the proceeds of a term life insurance policy is determined by the character of the funds used to pay the premium for the coverage which is in force at the date of the insured's death. *Accord*, *Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 754 P.2d 993 (1988).

Linda also relies upon the underlying community property principles which guided the court in *In re Marriage of Kittleson*, 21 Wn. App. 344, 585 P.2d 167 (1978), *review denied*, 92 Wn.2d 1009 (1979). In *Kittleson* this court divided a military pension having components of both military disability pay and military retirement pay, noting that it is not necessary "in all cases" that the trial courts "unwind" the complex interrelationship between that which, in any given pension plan, may share attributes of regular retirement pay and disability pay. *Kittleson*, 21 Wn. App. at 353. The *Kittleson* court recognized that, although military disability

---

[8]Although the court noted in *Ross v. Pearson*, *supra* at 611, that the parties had executed a statutory, 3-pronged community property agreement during their marriage, the decision is based on the character of insurance proceeds which are purchased with community funds and the marital community's property right in the insurance proceeds. That community character and the nature of the property right were not changed by the separation and divorce. The existence of the community property agreement was irrelevant to the issue decided.

pay is intended in part to compensate a veteran for his diminished ability to compete for civilian employment, RCW 26.09.080 provides a wise and flexible guideline for adjusting such considerations, so as to reach an equitable result. *Kittleson*, 21 Wn. App. at 347, 351-53.[9]

Linda argues that the cases cited by Robert are inapposite. *Kraft* is directed to the issue of such powers as may remain in the state courts to consider military disability pay in view of a specific, preemptive federal statute. *Brown* deals with the character of tort claims, whereas insurance coverage arises from contract and it has long been the law in Washington that the proceeds of an insurance contract share the character of the funds from which the relevant premium is paid. *Anglin* dealt with the character of a disability award which is based on a specific state statute, the purpose of which is to enable law enforcement officers and firefighters, public employees who are in inherently dangerous professions, to provide for themselves and their dependents in case of disability or death. RCW 41.26.020; *Anglin*, 52 Wn. App. at 322.

Linda argues further that a privately purchased disability insurance contract is more akin to a term life insurance policy than it is to a publicly funded disability program. Just as married parties may elect to purchase insurance coverage which protects the family from economic loss in the event of a family breadwinner's death, they may elect to insure against the economic losses which will occur if a breadwinner becomes disabled before he or she is able to acquire substantial retirement benefits. She argues that, in a sense, both pension plans and disability policies are purchased to provide for "wage replacement". A pension plan is acquired during marriage with community funds and/or community labor to replace wages which will be lost when the employee spouse retires. A

---

[9]*Kittleson* was decided prior to the United States Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). In the Uniformed Services Former Spouses' Protection Act of 1988, Congress devised a means of defining and distinguishing between military retirement pay and military disability pay.

disability policy is acquired during marriage with community funds and, in the case of employee fringe benefits, with community labor, to replace wages which will be lost if the employee spouse becomes disabled during what otherwise would be his or her productive employment years. A married couple ought to be able to purchase a disability policy which provides both a contingent "disability" plan and a contingent "pension" plan. Linda argues that the Prudential policy at issue here is exactly that kind of insurance contract. It is not a complex process to distinguish between the two kinds of coverage: the disability portion insured Robert's wages before the age he would normally retire; the pension portion protected the marital community after Robert's normal retirement age.

Robert argues that *Ross v. Pearson, supra, Chase v. Chase, supra,* and those rationales in *Kittleson* which may have survived the changes in federal law relating to military pensions have been implicitly overruled by *In re Marriage of Brown, supra.*[10]

## DISCUSSION

We find *In re Marriage of Kraft, supra,* to be of little relevance to the issue in this appeal. *Kraft* does not change the principles of Washington community property law. It merely reflects the extent to which those principles must give way, in view of *Mansell v. Mansell, supra,* when the subject is military disability pay. In *Mansell,* the United States Supreme Court determined that Congress intended to preempt state community property laws with respect to the treatment of military disability pay. *Mansell,* 490 U.S. at 594-95.

Our Supreme Court's decision in *Kraft* was handed down after the parties briefed the instant appeal. Robert relied

---

[10]In *Brown,* 100 Wn.2d at 739, the Supreme Court overturned one of the underlying rationales upon which the *Kittleson* court had relied, namely the *Hawkins* rule that a claim for personal injury to a married person by a third party tortfeasor is community property. *See Kittleson,* 21 Wn. App. at 348, 353. *Chase* and *Ross v. Pearson, supra,* sound, on the other hand, in contract law. In *Chase* the payments at issue were compared with retirement benefits. *See Chase,* 74 Wn.2d at 258.

heavily in his brief upon the following passage from the Court of Appeals' decision in *Kraft*:

> Even before *Mansell*, under Washington law Mr. Kraft's disability benefits were in the nature of compensation for loss of future wages and should be considered to be Mr. Kraft's *individual property*. *See In re Marriage of Anglin*, 52 Wn. App. 317, 320-25, 759 P.2d 1224 (1988). Such compensation for loss of future wages is not an asset which can be used to offset other assets, but should only be considered as affecting Mr. Kraft's ability to pay spousal maintenance or child support. It is clear from *In re Marriage of Huteson*, 27 Wn. App. 539, 541-43, 619 P.2d 991 (1980) that loss of future income is not a community asset to be divided on a present value or any other basis.

(Footnote omitted. Italics ours.) *In re Marriage of Kraft*, 61 Wn. App. 45, 49, 808 P.2d 1176 (1991).

In her petition for review, Mrs. Kraft argued to the Supreme Court that, by its use of the term *individual property*, the Court of Appeals "impermissibly usurped legislative power by defining a new class of 'individual' property which is not subject to the rules for distribution of property on dissolution of marriage." *Kraft*, 119 Wn.2d at 451. The Supreme Court disagreed that this was so:

> The court stated that it was calling the disability pay "individual property" simply to dispel any idea that military disability pay is subject to division as separate property. *Kraft*, [61 Wn. App.] at 49 n.2. The Court of Appeals explained that it wanted to avoid use of the term "separate property" in reference to the retirement pay because disability pay may be community property when received during marriage and may be separate property when received outside the marriage. *Kraft*, [61 Wn. App.] at 49 n.2. The court was not creating a new class of property.

*Kraft*, 119 Wn.2d at 451.

Thus, our Supreme Court appears to have modified the lower appellate court's sweeping statement that "compensation for loss of future wages is not an asset" which can be divided, *Kraft*, 61 Wn. App. at 49, into a less sweeping observation that disability pay "may be" separate property when received outside of marriage. *Kraft*, 119 Wn.2d at 451. Certainly the Supreme Court has not foreclosed the possibility that a marital community might, in some circumstances, acquire a property interest in compensation for lost

future wages of a spouse, outside the context of military disability pay.

*In re Marriage of Brown, supra,* does not control the issue in this appeal. A tort recovery for a married person's lost future (postdissolution) wages is no longer treated as community property in Washington because such a tort recovery is not property "which is acquired by onerous title, or in exchange for other community property." *Brown,* 100 Wn.2d at 737. We deal here with an insurance contract purchased privately with community funds and enforceable by the marital community. The community character of such contractual benefits as are being paid in this case has not heretofore been questioned in Washington law.

*In re Marriage of Anglin, supra,* provides the most support for Robert's position, for in *Anglin* a panel of this court held that the husband's LEOFF 1 disability award was based solely on his disability and, therefore, was properly treated solely as a compensation for lost future (postdissolution) wages. As such, the award was not a marital asset to be characterized and distributed by the trial court. As Robert points out, the disability award was a benefit of the husband's employment. Unlike the disabled spouse in *In re Marriage of Huteson,* 27 Wn. App. 539, 619 P.2d 991 (1980), Mr. Anglin was fully vested in the LEOFF retirement system (although vesting is not a prerequisite of a LEOFF disability award). As can be seen from the Court of Appeals' decision in *Kraft,* 61 Wn. App. 45, *Anglin* has been interpreted as authority for the sweeping proposition that compensation for lost future (postdissolution) wages can *never* be treated as divisible property in a marital dissolution proceeding.

As implied in *Kraft,* 119 Wn.2d at 451, however, such a sweeping proposition may go too far. Indeed, the *Anglin* court did not, itself, foreclose inquiry, in the appropriate case, as to whether a given disability award may encompass a retirement component.

This court has had occasion to consider the ramifications of *Anglin* as applied to the question of whether The Boeing Company Financial Security Plan (FSP) (allowing employees

to bank up to 40 hours of unused sick leave per year for use in the event of a serious illness or to receive in dollar value upon death or retirement) is an asset subject to distribution in a marital dissolution proceeding:

> In the context of disability benefits, our courts have held that disability payments which are in the nature of compensation for lost future wages are not an asset for distribution upon dissolution. *In re Marriage of Kraft*, 61 Wn. App. 45, 49, 808 P.2d 1176, [*aff'd on other grounds*, 119 Wn.2d 438, 832 P.2d 871 (1992)]; *In re Marriage of Anglin*, 52 Wn. App. 317, 324, 759 P.2d 1224 (1988); *In re Marriage of Huteson*, 27 Wn. App. 539, 543-44, 619 P.2d 991 (1980). By contrast, retirement benefits are considered deferred compensation for past services, and thus the portion of those benefits accrued during marriage is community property. *In re Marriage of Kittleson*, 21 Wn. App. 344, 348, 585 P.2d 167 (1978), *review denied*, 92 Wn.2d 1009 (1979); *Huteson*, 27 Wn. App. at 542. However, some disability pensions may substitute for regular retirement pensions or contain elements attributable to retirement pensions. *Kittleson*, 21 Wn. App. at 353. Where a spouse has elected to receive disability in lieu of retirement benefits, for instance, only the amount of disability received over and above what would have been received as retirement benefits is considered that spouse's separate property. *Anglin*, 52 Wn. App. at 323 (citing *In re Marriage of Saslow*, 40 Cal. 3d 848, 860-61, 221 Cal. Rptr. 546, 710 P.2d 346, 351-52 (1985)); *Kittleson*, 21 Wn. App. at 351 (quoting *In re Marriage of Mueller*, 70 Cal. App. 3d 66, 70-71, 137 Cal. Rptr. 129 (1977)); *see also Kraft*, 61 Wn. App. at 45.
>
> The FSP contains elements of both deferred compensation and future earnings replacement. It is similar to vacation leave (which is definitely deferred compensation) in that it converts unused sick leave into something akin to vacation leave, which may be used as needed in the event of future illness, or else taken in cash upon termination of employment.
>
> We uphold the trial court's characterization of the FSP as an asset for distribution, and find no abuse of discretion in its award of that asset to [the employee spouse].

*In re Marriage of Nuss*, 65 Wn. App. 334, 343-44, 828 P.2d 627 (1992).

In short, none of the cases upon which Robert has relied for this appeal persuade us that the trial court erred in characterizing the post-age-65 payments provided under the Prudential policy as "pension" payments and subject to division as community property.

Turning now to the cases upon which Linda has relied, *Chase v. Chase, supra,* and *Ross v. Pearson, supra,* would appear, at first reading, to justify a ruling in her favor, without further analysis. However, a closer examination of *Chase* reveals that it rested, in part, upon two earlier cases which have been overruled, in part, by our State Supreme Court: *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937) and *Small v. Bartyzel,* 27 Wn.2d 176, 177 P.2d 391 (1947), *cited in Chase,* at 257. *Ross v. Pearson, supra,* was premised upon the validity of *Chase.*

*Powers* was overruled, in part, in *Francis v. Francis,* 89 Wn.2d 511, 573 P.2d 369 (1978). *Small* was overruled, in part, in *Aetna Life Ins. Co. v. Wadsworth,* 102 Wn.2d 652, 689 P.2d 46 (1984).

The *Chase* court relied upon *Powers* and *Small* for the following proposition:

> Insurance proceeds in this state are property and not mere expectancies or choses in action, and, if the premiums are paid with community funds, the insurance proceeds are community property. [Citing *Powers.*] A community which pays the premiums on a group policy of life insurance acquires a property right in the insurance proceeds. [Citing *Small.*][11]

*Chase,* 74 Wn.2d at 257.

The Supreme Court's ruling in *Francis* did not change the premise of *Powers* upon which the *Chase* court relied. *See Francis,* 89 Wn.2d at 515. In *Wadsworth,* however, the Supreme Court stated:

> One criticism of *Powers* revolves around its characterization of the designation of a life insurance beneficiary as a present property interest rather than an expectancy. Where the policy owner has the right to change the beneficiary, the named beneficiary has no vested right in the nomination. Even if the insured cannot change the beneficiary, the beneficiary's interest is not indefeasibly vested so long as there remain premiums to be paid. Thus, the characterization [in *Powers*] of the

---

[11]In *Chase,* the husband, a Boeing employee, received a lump sum disability settlement from Aetna Life Insurance Company, pursuant to a group policy provided as a benefit of his employment and paid for, in part, by payroll deduction during marriage. The trial court's award of one-half the benefit to the wife was affirmed on appeal.

right to proceeds as a present property interest rather than an expectancy is wrong.

(Citations omitted.) *Wadsworth*, 102 Wn.2d at 656.[12]

■ The Prudential policy at issue here contains a premium waiver provision. So long as Robert remains disabled, no premiums are due. We hold that Robert's right to continue to receive payments is more than a mere expectancy. It is a vested right, contingent only upon his remaining disabled.

> The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy. The law has long recognized that a contingent future interest is property no matter how improbable the contingency; an expectancy, on the other hand, "is not to be deemed an interest of any kind."

(Citations omitted.) *In re Marriage of Brown*, 15 Cal. 3d 838, 846 n.8, 544 P.2d 561, 566, 126 Cal. Rptr. 633 (1976), *cited in* Washington State Bar Ass'n, *Community Property Deskbook* § 3.24, at 3-27 (2d ed. 1989). *Cf. DeRevere v. DeRevere*, 5 Wn. App. 741, 491 P.2d 249 (1971); *Wilder v. Wilder*, 85 Wn.2d 364, 534 P.2d 1355 (1975) (a contingent interest in a deferred compensation plan is property).

We find nothing in *Francis* or *Wadsworth* which undermines the validity of *Chase* and *Ross v. Pearson, supra*, insofar as it may be appropriate to treat a disability insurance policy in the same manner as a term life insurance policy, for purposes of determining the ownership of such a policy and its proceeds. That there may be a distinction between these two types of policies is an issue which was not addressed in *Chase* or in *Ross v. Pearson, supra*. Both cases

---

[12]The *Wadsworth* court also overruled *Small*, insofar as *Small* had determined that the proceeds of a term life insurance policy should be characterized by the apportionment rule, under which ownership of an insurance policy or its proceeds is separate or community property in proportion to the premiums paid. Term insurance has no cash surrender value. Premiums purchase protection from the economic risk of death for a fixed period of time. At the end of that period, there is no asset remaining. The *Wadsworth* court adopted the risk payment theory, in place of the apportionment theory, for purposes of determining the community or separate character of the proceeds of a term life insurance policy. *Wadsworth*, 102 Wn.2d at 657-58.

rest upon the unstated assumption that there are no distinctions to be considered.[13]

We now address the question of whether a disability insurance policy is properly treated in the same manner as a term life insurance policy for purposes of characterizing the ownership of the policy proceeds. Certainly the two types of policies share some common characteristics. Both are contracts and historically a right of contract enforcement is a property interest. Both insure against the risk of economic loss, although in the case of life insurance there also may be donative intent of a testamentary nature. Neither type of policy, in its pure form, accrues cash value. Both types of policies insure against a stated risk for a specified policy period. Both types of policies may be expected to return, in the event of the happening of the contingency insured against (death or disability while the policy is in force), a far greater return than merely the amount invested, together with interest thereon. Both types of policies require the payment of money in exchange for the benefit provided. An insurance policy of any kind is onerously acquired, in exchange for the payment of funds.

There are some differences, as well, primarily with respect to the nature of the risk involved. A disability policy is designed to protect against the risk of loss of the insured's future earning capacity. Earning capacity is not a divisible asset, although it is a factor to be considered when dividing the community and separate property in a dissolution proceeding. *In re Marriage of Hall*, 103 Wn.2d 236, 247-48, 692 P.2d 175 (1984). An able-bodied spouse leaves a dissolved marriage with his or her earning capacity intact, and his or her former spouse has no property interest in that earning capacity. A disabled spouse leaves a dissolved marriage with his or her earning capacity impaired or nonexistent. His or

---

[13]In addition, both cases arise from postdecree partition actions, where the appropriate remedy is an equal division of property owned by tenancy in common. An equal division of community property is not required by RCW 26.09.080. Nor was an equal division required under the predecessor statute, former RCW 26.08.

her ability to acquire assets in the future, by means of employment, is likewise impaired or nonexistent.

Certainly it can be argued rationally that, by purchasing disability insurance, a married couple insures against various risks, some of which are based on "divisible property" interests and some of which are based on other financial considerations. The risk of economic loss to the marital community (lost earnings during marriage; lost opportunity to acquire pension benefits during marriage) is based entirely upon divisible property interests. The risk that, in the event of a marital dissolution, an able-bodied spouse may be required to pay spousal maintenance for the support of a disabled spouse and the risk that a disabled spouse otherwise may be unable to meet his or her obligations for spousal and child support and for community debt service are based at least in part upon other financial considerations not usually treated as property interests.

In this case of Leland, we need not decide whether the marital community acquired a property interest in the disability payments which Robert will receive before he turns 65. The trial court's determination that no such property interest was acquired is the law of this case. We need only decide whether the marital community acquired a property interest in such payments as Robert will receive if he remains disabled and survives beyond the age of 65. We hold that the trial court did not err in characterizing the post-age-65 payments as in the nature of a "pension" in which the marital community retains an interest. This is an equitable result, and one which does no violence to underlying concepts of Washington community property law as it applies to the proceeds of insurance policies purchased with community funds.

We are guided in our analysis by the decision of the California Supreme Court in *In re Marriage of Saslow*, 40 Cal. 3d 848, 710 P.2d 346, 221 Cal. Rptr. 546 (1985), taking into consideration, however, some fundamental differences between California community property law and Washington community property law.

In *Saslow*, during an 18-year marriage, the husband purchased three disability insurance policies, using community funds to pay the premiums. During the marriage the husband became disabled and commenced to draw disability benefits under all three policies. The policies expired at various times. At the time of trial, the husband, who was then 59 years old, was receiving $2,181 per month. At his age 60, the payments would reduce to $1,881 per month. At his age 70, the payments would reduce to $631 per month. At his age 75, the payments would reduce to $506 per month and continue at that level for the remainder of his lifetime.

Under California Civil Code § 4800(a), *cited in Saslow*, at 857 n.4, community property must be divided equally, regardless of any equitable considerations.[14] The California court determined that the most equitable approach would be to treat the disability benefits as separate property insofar as they were intended to replace postdissolution earnings which would have been the separate property income of the disabled spouse, and to treat the benefits as community property insofar as they were intended to provide retirement income. *Saslow*, at 860-61.

The California Supreme Court remanded to the trial court for a factual determination of the parties' intent as to the disability and retirement components of the policies at issue. *Saslow*, at 860-62. Although we agree with the California court's determination of the most equitable result, we believe that the character of the type of insurance proceeds at issue here is, in Washington, a question of law. Absent a valid contract between the parties declaring otherwise, all property "acquired" during marriage that is not otherwise defined as separate property by statute is per se community property. RCW 26.16-.030; *In re Marriage of Brown*, 100 Wn.2d at 737. The post-age-65 payments at issue here were onerously acquired by virtue of an enforceable contract between the marital community and Prudential Insurance Company, with the payment of com-

---

[14]Compare RCW 26.09.080, which requires an equitable but not necessarily an equal division of community and/or separate property.

munity funds. The parties elected to insure against the risk of economic loss in the event of Robert's disability. Robert became disabled before the age of 50 and before the marital community had acquired any pension benefits. The Prudential policy provides for monthly payments in lieu of the pension benefits the parties might otherwise have acquired. The risk the parties insured against came to pass during the period for which the marital community had paid the premiums due. We believe that the risk payment theory adopted in *Wadsworth* is properly applied to the Prudential policy at issue here. We deem it irrelevant that the post-age-65 Prudential payments do not represent "deferred compensation" or that the payments do not meet the definition of retirement benefits under ERISA[15] or other applicable pension laws. The payments at issue here clearly provide an income that bears a strong resemblance to a pension benefit. We hold that the trial court did not err in determining that the "pension" component of the Prudential policy is divisible community property.

■ We also hold that the trial court did not abuse its discretion by dividing the post-age-65 payments equally between the parties, on a monthly basis, as they are received. Although the Prudential policy provides a fixed income that will not increase with inflation, it is a tax-free income. This factor offsets the fixed nature of the benefit. Robert's postdissolution obligations to his family will be completed no later than 9 years from the time of trial. His obligations to Ryan have already terminated. His obligations to Linda will terminate in a year from now. Linda shares in the obligation for Kari's support and education. Although Linda may be able to acquire some retirement benefits through her own employment, her earning capacity is only "fair". The trial court did not characterize her earning capacity as "good" or "excellent". The trial court determined that, but for Robert's disability and the fact that his income is fixed, Linda would have been

---

[15]Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829.

entitled to a disproportionate property award in her favor. There was no abuse of discretion.

## ATTORNEY FEES

■ Linda seeks to be awarded her attorney fees for defending this appeal pursuant to RAP 18.1 and RCW 26.09.140. The trial court awarded a portion of Linda's attorney fees, based on need and ability to pay. However, Linda has failed to comply with RAP 18.1(c) by filing an affidavit of financial need no later than 10 days prior to oral argument. Accordingly, we decline to consider an award of fees.

## CONCLUSION

We affirm the trial court's property award and decline to award attorney fees to respondent.

WEBSTER, C.J., and BAKER, J., concur.

Review denied at 121 Wn.2d 1033 (1993).