[No. 14827-7-II. Division Two. March 17, 1994.]

*In the Matter of the Marriage of* ANDREW KOLLMER, *Appellant, and* CAROLYN KOLLMER, *Respondent.*

*Margaret H. Brost,* for appellant.

*Carolyn M. Kerstetter,* pro se.

ALEXANDER, J. — Andrew Kollmer appeals a decree of dissolution which provided that he pay one-third of a disability payment to his ex-spouse. We affirm in part and reverse in part.

Andrew Kollmer and Carolyn Kollmer (now Carolyn Kerstetter) were married in 1965. Three years later, Kollmer obtained employment as a police officer with the City of Lacey. Kollmer maintained that employment until 1978, when he suffered an injury that prevented him from performing his duties as a police officer. At the time of the injury, Kollmer, who was then 35 years old, was vested in the State of Washington's Law Enforcement Officers' and Fire Fighters' Retirement System, Plan I (LEOFF I)[1] by virtue of the fact that he had served over 5 years as a police officer. Although Kollmer was not eligible to retire under LEOFF I until he reached age 50,[2] he was eligible to receive disability pay under LEOFF I due to his injury. RCW 41.26.120. Consequently, Kollmer began receiving disability payments of $1,640 per month. Pursuant to the provisions of

---

[1]Persons who became law enforcement officers prior to October 1, 1977, are members of LEOFF I. RCW 41.26.030(28). Persons who became law enforcement officers on and after October 1, 1977, are covered under LEOFF II. RCW 41.26.030(29). Under LEOFF I, a percentage of the employees' wages are deducted each month and paid into the plan, together with contributions from the public employer. RCW 41.26.080.

[2]*See* RCW 41.26.090:

"**Retirement for service.** Retirement of a member for service shall be made by the department as follows:

"(1) Any member having five or more service credit years of service and having attained the age of fifty years shall be eligible for a service retirement allowance . . .."

RCW 41.26.130(3), Kollmer was entitled to receive these disability payments for as long as his disability continued.[3]

Kollmer and Kerstetter's marriage ended when the Thurston County Superior Court entered a decree of dissolution on February 22, 1991. In that decree, the trial court ordered Kollmer, who was then 48, to pay Kerstetter one-third of his monthly disability payment, concluding that that portion of his disability pay substituted for retirement pay. The trial court stated:

> There is no incentive now for [Kollmer] to ever seek to show he is not disabled because if he were not, his total retired pay entitlement would be less than $750 per month whereas his disability pay is approximately $1640 per month.

Kollmer appeals, claiming that the trial court erred in characterizing his disability pay as a marital asset subject to division.

 Characterizing the nature of income is essential to determining whether it is divisible upon dissolution. Disability payments which are solely meant to compensate an individual for lost postdissolution wages are not considered an asset divisible upon dissolution. *In re Marriage of Nuss*, 65 Wn. App. 334, 343, 828 P.2d 627 (1992); *In re Marriage of Anglin*, 52 Wn. App. 317, 324, 759 P.2d 1224 (1988). On the other hand, retirement income is properly characterized as deferred compensation for past services and, thus, any portion of retirement income that was earned during the existence of the community is divisible upon dissolution. *Nuss*, 65 Wn. App. at 343.

In support of his argument that the trial court erred in awarding Kerstetter any portion of his disability pay, Kollmer relies heavily upon *Anglin*. In that case, Division One of this court determined that a LEOFF I disability payment a husband received due to an injury that prevented him from

---

[3] RCW 41.26.130(3) provides:

"Benefits under this section will be payable until the member recovers from the disability or dies. If at the time that the disability ceases the member is over the age of fifty, he or she shall then receive either disability retirement allowance or retirement for service allowance, whichever is greater."

performing his duties as a City of Everett police officer was not subject to division in a dissolution proceeding. Although the *Anglin* court noted that the husband, who was not yet 50 years of age, was vested under the LEOFF I system, it observed that he could be denied disability pay until he reached age 50 if his disability ceased. The court concluded, therefore, that the disability entitlement was not akin to retirement pay and, thus, was not divisible as a marital asset. *Anglin*, 52 Wn. App. at 324.

In so ruling, the *Anglin* court took note of this court's decision in *In re Marriage of Huteson*, 27 Wn. App. 539, 619 P.2d 991 (1980), where we concluded that a husband's LEOFF I disability payment was not a marital asset divisible upon dissolution. In that case, the husband, Gerald Huteson, suffered a heart attack while he was employed as a firefighter for the City of Vancouver. At the time he sustained the injury, Huteson was separated from his wife and, unlike the husband in *Anglin*, Huteson had not been in service for the 5 years necessary to qualify to receive retirement pay after he was "over the age of 50". *Huteson*, at 540. Huteson did, however, qualify for LEOFF I disability benefits. In reaching our determination, we said that there were no retirement elements in his disability award "except for the possibility that [Huteson] may, in the future, return to his fire fighter's duty and vest a retirement benefit". *Huteson*, at 543. In addition, we said:

> [D]isability payments acquired before the disabled spouse has earned a vested right to retirement benefits are designed to compensate solely for loss of future earnings. . . .
>
> We acknowledge that if the disability pension . . . is taken in lieu of a vested retirement benefit, circumstances may call for a different characterization.

*Huteson*, at 543.

On the other hand, in *Nuss*, Division One of this court characterized payments from a Boeing financial security plan as a divisible asset.[4] In doing so, it reasoned that:

---

[4] That plan "allows employees to bank up to 40 hours of unused sick leave per year for use in the event of a serious illness or injury that exhausts their regular sick leave benefits." *Nuss*, 65 Wn. App. at 342.

Where a spouse has elected to receive disability in lieu of retirement benefits, for instance, only the amount of disability received over and above what would have been received as retirement benefits is considered that spouse's separate property.

*Nuss*, 65 Wn. App. at 343. Similarly, in *In re Marriage of Leland*, 69 Wn. App. 57, 847 P.2d 518, *review denied*, 121 Wn.2d 1033 (1993), Division One determined that a disability plan that had been financed with community funds resembled a pension. It, therefore, characterized the entitlement as a community asset subject to division once the recipient reached the retirement age of 65. The *Leland* court observed that our Supreme Court, in *In re Marriage of Kraft*, 119 Wn.2d 438, 451, 832 P.2d 871 (1992), appeared to have modified what Division One characterized as a "sweeping statement" in *In re Marriage of Kraft*, 61 Wn. App. 45, 49, 808 P.2d 1176 (1991), that "'compensation for loss of future wages is not an asset' which can be divided, . . . into a less sweeping observation that disability pay 'may be' separate property when received outside of marriage."[5] (Citations omitted.) *Leland*, 69 Wn. App. at 67. Additionally, the *Leland* court, interpreting the Supreme Court's ruling in *Kraft* as indicating that *Anglin* does not stand for the proposition that compensation for lost future wages may never be characterized as community property, said:

> Indeed, the *Anglin* court did not, itself, foreclose inquiry, in the appropriate case, as to whether a given disability award may encompass a retirement component.

*Leland*, at 68.

While the status of the law in this area is not altogether clear, we conclude, in light of all of the above authorities, that the trial court did not err in awarding Kerstetter an interest in Kollmer's disability pay. Insofar as the trial court

---

[5]In *Kraft*, a husband appealed a trial court's decision which characterized the disability portion of his military retirement pension as an asset subject to division in a dissolution proceeding. Division Three of this court reversed the trial court, stating that, under *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), "[s]tate courts may not treat military retirement pay, waived by the retiree in order to receive veterans' disability benefits, as property divisible upon dissolution." *Kraft*, 61 Wn. App. at 49.

determined that Kollmer's LEOFF I benefits were divisible after Kollmer was "over the age of 50", its determination was correct. At that age, any disability benefit Kollmer would be entitled to receive, up to the amount he would have received as retirement pay at that age, clearly will have the characteristics of compensation for past services. It was, therefore, properly divisible. On the other hand, any disability pay Kollmer has received or will receive prior to becoming eligible to collect retirement pay does not have characteristics of compensation for past services. It was, therefore, error for the trial court to divide it.

Here, as we have observed above, the trial judge awarded Kerstetter one-third of Kollmer's disability pay. Considering the great discretion accorded a judge in dividing property, *see In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97, *cert. denied*, 473 U.S. 906 (1985), we cannot say that the trial court committed error to the extent it divided the benefits that Kollmer would receive after he is "over the age of 50" on a one-third to two-thirds basis. To the extent it divided Kollmer's disability pay prior to the time Kollmer was "over the age of 50", it erred.

We, therefore, affirm the trial court in part, reverse it in part, and remand for modification of the decree consistent with this opinion.

MORGAN, C.J., and HOUGHTON, J., concur.

Review denied at 124 Wn.2d 1022 (1994).