[No. 19289-2-I.   Division One.   September 6, 1988.]

In the Matter of the Marriage of THOMAS HOWARD ANGLIN, *Respondent, and* JAN ARIERA ANGLIN, *Appellant.*

*James W. Frits* and *Elhart, Frits, Knowles & Van Berkem,* for appellant.

*Timothy P. Ryan, Jeanette L. Brinster,* and *Brinster, Templeman & Ryan, P.S.,* for respondent.

SCHOLFIELD, C.J.—Jan A. Anglin appeals the decree of dissolution of her marriage to Thomas H. Anglin. We affirm.

## FACTS

The Anglins were married on May 21, 1976, in Everett, Washington. One child, Ryan Anglin, was born to the couple on July 30, 1978. Tom has two children from a prior marriage, for whom he pays child support in the amount of $200 per month. The trial court awarded custody of Ryan to Jan, while allowing Tom liberal, specified visitation.

The trial court found that Tom, 38 years old at the time of trial, had a total net income of $3,220 per month, with $1,568 per month coming from a disability pension from the City of Everett, and $1,652 coming from his employment as public safety director with the City of Mill Creek. The trial court found that Jan, age 33 at the time of trial, had a net income of $1,734.10 per month from her employment with the Boeing Company. The court noted that Jan had a history of working overtime, which supplemented her monthly income. The trial court found that Tom earned 63.5 percent of the couple's income, while Jan earned 36.5 percent. The trial court awarded no maintenance to either party.

Based on those figures, with a small reduction for Tom's other child support obligation, the trial court ordered Tom to pay $418 per month in child support for Ryan, and to contribute 63.5 percent of the cost of the child's day care. In determining an appropriate division of property, the trial court found that the parties executed a community property agreement in 1979. The trial court ordered that the family home be sold and the proceeds divided evenly, as the parties had requested.

Jan and Tom had already divided their personal property. Tom testified that he believed that Jan received $30,000 more in personal property than he. The trial court chose not to disturb the parties' distribution of personal

property, nor did the court value it. The trial court did note that the respondent wife was receiving a slightly greater amount of personal property than the petitioner husband, but not in the amount testified to by Tom. The trial court ordered that Tom should assume $9,637.89 of community obligations, and that Jan should assume $4,862.64 of the community obligations, approximately a 66 percent/34 percent split.

The injury for which Tom was receiving benefits was a work–related knee injury, incurred while he was on duty as an Everett police officer in 1979 or 1980. Tom had worked as a police officer for Everett since 1969. His disability award under LEOFF I[1] was made permanent in April 1980. The trial court noted that Tom still had knee problems that restricted his activities. The trial court also found that Tom was vested in the retirement program at the City of Everett, but not that of Mill Creek.

At trial, Tom testified that it was his understanding that his disability award was for lost future wages. Tom further testified that the disability award was reviewable at any time and subject to termination if it was determined that he no longer suffered from the disability. However, an actuary who was called as Jan's witness testified that the present value of Tom's disability benefit was $351,500.

The trial court determined that the disability award was community property (based on the community property agreement) and acknowledged that evidence had been presented that the present actuarial value of the pension was $351,500. However, the trial court did not make a finding on that issue. The court awarded Tom all of his disability income, and none of it to Jan, based on the age of each party, their respective incomes, and the distribution of other assets and obligations.

Jan appeals only the award of the disability benefits.

---

[1] Law Enforcement Officers' and Fire Fighters' Retirement System.

DISTRIBUTION OF DISABILITY INCOME

RCW 26.09.080 provides for the disposition of a couple's property in a dissolution proceeding as follows:

> In a proceeding for dissolution of the marriage, . . . the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

In a dissolution action, all property, both community and separate, is before the trial court for distribution. *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972). The trial court has the duty to characterize the property of the parties as either community or separate, *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966), and the court must dispose of all the property of the parties which is brought before it. *In re Marriage of Soriano,* 31 Wn. App. 432, 643 P.2d 450 (1982). The status of property as community or separate is not controlling. Rather, the trial court must ensure that the final division of property is "fair, just and equitable under all the circumstances." *In re Marriage of Hadley,* 88 Wn.2d 649, 656, 565 P.2d 790 (1977). Future earning potential, although a factor to be considered by the trial court in determining a just and equitable division of property, is not an asset to be divided between the spouses. *In re Marriage of Hall,* 103 Wn.2d 236, 692 P.2d 175 (1984). The trial court's property division in a dissolution action is reviewed only for a manifest abuse of discretion. *In re Marriage of Konzen,* 103 Wn.2d 470, 693 P.2d 97 (1985).

In *In re Marriage of Kittleson,* 21 Wn. App. 344, 585 P.2d 167 (1978), *review denied,* 92 Wn.2d 1009 (1979), a husband was receiving a military disability retirement pension. In dividing the couple's assets, the trial court found that 85 percent of the husband's years of military service occurred during the marriage and, therefore, 85 percent of the present value of the pension was community property, and awarded one-half of that sum to the wife, to be paid in monthly installments.

The *Kittleson* court noted a similarity between disability pay and personal injury recovery, arising from the view of disability pay as compensation for loss rather than compensation for past services.[2]

■ In making its decision, the *Kittleson* court stated as follows:

An inflexible rule that required a disability pension to be classified as separate property would ignore the fact that some "disability" pensions step into the place of a regular retirement pension and permit an earlier retirement and/or retirement with increased payments, others contain elements in the ward attributable to an earned regular retirement pension along with elements which compensate for physical injury, and yet other awards are made for disability alone. We hold that to require an unwinding of such awards in all cases would add a complexity to the trial court's task which is not warranted and which we find to be unwarranted in this case. Further, we hold that it would be unwise by our pronouncement of an absolute rule to preclude an award to the other spouse in the future from a "disability" pension when the extreme situation arises that would find one

---

[2]The *Kittleson* court went on to note that the recovery of damages by either spouse for personal injury inflicted by a third party tortfeasor is treated as community property in Washington. That is no longer the law in this state, as a result of *In re Marriage of Brown,* 100 Wn.2d 729, 675 P.2d 1207 (1984), which held that the pain and suffering portion of a personal injury award is the injured spouse's separate property, but that the portions of the award that reimburse for injury-related expenses and compensate for lost wages and earning capacity are separate or community, according to the character of the fund being reimbursed, and the earning capacity being made whole. *Brown,* at 738.

spouse able to look to a more than adequate disability pension while the other would be left destitute. *Kittleson,* at 353. The *Kittleson* court thus held that the trial court did not abuse its discretion in awarding part of the pension to the wife. However, the court did note that "the preferable course is to award to the spouse . . . any award that arises from his or her personal injury or disability". *Kittleson,* at 353–54.

In *In re Marriage of Huteson,* 27 Wn. App. 539, 619 P.2d 991 (1980), the husband became disabled and began receiving monthly benefits under LEOFF after the couple had separated. The wife contended that the disability pension was community property with a present actuarial value of $101,531. However, the trial court characterized the disability pension as the husband's separate property, and found that:

> Respondent's disability income compensates him for loss of future income and is not a community asset to be divided on a present value or any other basis.

*Huteson,* at 541.

On appeal, the *Huteson* court held that the disability award was for loss of future earning capacity only and contained no elements of deferred compensation. *Huteson,* at 544. The *Huteson* court noted RCW 41.26.020, which governs the LEOFF system, and stated that the statutory intent was to enable "'such employees to provide for *themselves and their dependents* in case of disability or death'." *Huteson,* at 542 (quoting RCW 41.26.020).

The *Huteson* court stated that a disability award acquired before the disabled spouse has earned a vested right to retirement benefits is designed to compensate only for loss of future earnings and should not be considered a community asset subject to division in a dissolution. *Huteson,* at 543. Thus, the *Huteson* court held that the trial court did not err in holding the husband's postseparation disability award to be separate and also held that the trial court's distribution was not an abuse of discretion. *Huteson,* at 544.

Similarly, in *In re Marriage of Saslow,* 40 Cal. 3d 848, 710 P.2d 346, 221 Cal. Rptr. 546 (1985), the trial court in a dissolution action characterized the majority of the couple's assets as community and divided them equally. With respect to benefits paid to the husband from certain disability policies, the trial court determined the benefits were separate, but ordered the husband to pay one–half the amount of the benefits as spousal support.

On appeal, the California Supreme Court stated that the most equitable approach to this problem is for the trial court to treat disability benefits as separate property insofar as they replace postdissolution earnings that would have been the separate property income of the disabled spouse, and to treat the benefits as community property to the extent they are intended to provide retirement income. *Saslow,* 710 P.2d at 351–52.

Tom Anglin's disability award arose under LEOFF I, governed by former RCW 41.26. The pertinent portions of the statute read as follows:

> Retirement for disability. Any member, regardless of his age or years of service may be retired by the disability board, subject to approval by the retirement board as hereinafter provided, for any disability which has been continuous since his discontinuance of active service and which renders him unable to continue his service, whether incurred in the line of duty or not.

Former RCW 41.26.120. Former RCW 41.26.130 provides in pertinent part:

> (3) Benefits under this section will be payable until the member recovers from the disability or dies. If at the time that the disability ceases the member is over the age of fifty, he shall then receive either his disability retirement allowance or his retirement for service allowance, whichever is greater.
>
> . . .
> (5) A member retired for disability shall, at the discretion of the disability board, be subject to a semiannual medical examination by a physician approved by the disability board prior to his attainment of age fifty.

Former RCW 41.26.140 provides:

Semiannual reexamination of disability beneficiaries—Reentry. (1) Upon the basis of a semiannual reexamination of members on disability retirement, the disability board shall determine whether such disability beneficiary is still unable to perform his duties either physically or mentally for service in the department where he was employed.

(2) If the disability board shall determine that the beneficiary is not so incapacitated his retirement allowance shall be canceled and he shall be restored to duty in the same civil service rank, if any, held by the beneficiary at the time of his retirement . . .

We note that because the husband in *Huteson* was not vested in the LEOFF system, the *Huteson* court did not need to deal with the question of whether some part of the disability award was for retirement, rather than for disability. In the case before us, however, the trial court found that Tom was vested in the LEOFF system. Thus, in determining whether the disability benefit was an asset subject to distribution, this court must ascertain the character of the benefits paid to Tom.

RCW 41.26.120 provides for the payment of a disability allowance, regardless of vesting of the employee. Unlike a retirement pension, the disability pension is subject to review, and may be terminated if a medical examination determines that the employee is no longer disabled. Under RCW 41.26.130, the medical examinations cease at age 50, and the employee can, at his or her election, choose between disability benefits and retirement benefits. Thus, because Tom was under 50, we hold that the award to him was based solely on his disability, rather than being in the nature of a retirement benefit. Thus characterized as repayment for lost future wages, we further hold that the pension was not a marital asset to be characterized and distributed by the trial court.[3] The trial court below did not abuse its discretion in awarding all of the disability

---

[3] We deem the community property agreement executed by the Anglins to have no application here, as such an agreement has no application to wages earned or compensation received, in lieu of wages after divorce.

benefits to Tom, the final, overall result being fair, just and equitable. *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977).

ATTORNEY'S FEES

Jan requests an award of attorney's fees on appeal, arguing that because her living expenses were substantially in excess of her available income at the time of trial, she is entitled to attorney's fees and costs on appeal. An affidavit filed by Jan's attorney in this court on June 3, 1988, states that Jan has or will incur attorney's fees of $5,913.75 and costs of $959.89 in pursuing this appeal. Tom argues that Jan has not shown need on her part justifying such an award. He also argues that he should be awarded his attorney's fees incurred in having to respond to this frivolous appeal. Tom's attorney filed an affidavit requesting attorney's fees in the amount of $2,913.50.

RCW 26.09.140 states in part as follows:

> The court . . . after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith . . .
>
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs.

In *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980), this court adopted the following guidelines for determining a frivolous appeal:

> (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater,* at 435.

This appeal cannot be deemed frivolous. The issue of whether the disability award was in the nature of compensation for lost future income or was more in the nature of a retirement benefit is a debatable issue upon which reasonable minds might differ.

An award of attorney's fees under RCW 26.09.140 is inappropriate as well. We find that Jan presented an insufficient showing of need. In the affidavit, Jan's attorney failed to provide this court with any information on Jan's current financial circumstances.

Jan testified that at the time of trial, her expenses were approximately $2,400 a month, and that her income was only approximately $1,700 per month. However, there was evidence that she worked overtime on a regular basis, and in addition, she has been receiving over $400 per month in child support from Tom. One other factor to be considered is that Jan has received or will receive benefits from the sale of the family residence. In the absence of a better showing of need, we decline to award attorney's fees.

Judgment affirmed.

PEKELIS and WINSOR, JJ., concur.