
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 37176-0-III |
| | ) | |
| TIMOTHY LEE MCMASTER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| JENNIFER ANN MCMASTER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Jennifer McMaster appeals a dissolution decision, denying her request for long-term maintenance. We affirm.

## FACTS

Jennifer and Timothy McMaster[1] were married for 25 years. In 2018, Tim filed for divorce. The parties disputed the financial terms of their dissolution and took their case to trial. At the time of trial, Jennifer was 51 years old and Tim was 54.

---

[1] For clarity and readability, we refer to the parties throughout the opinion as "Jenny" and "Tim."

No. 37176-0-III
*In re Marriage of McMaster*

Tim holds a bachelor's degree in mechanical engineering and a master's degree in business administration. The master's degree was earned during the marriage and paid for through student loans, $72,108 of which remained outstanding at the time of trial. Tim worked as an engineer throughout the marriage. Starting in November 2018 and continuing through trial, Tim worked as a power production manager for the Pend Oreille Public Utility District. He held $198,295 in various retirement accounts. As a state employee, Tim was required to contribute a significant amount of his salary to his public employees' retirement system (PERS) plan. Assuming Tim remained at his job until retirement at age 65 and made no voluntary contributions to his PERS plan, he was on track to thereafter receive a monthly benefit of just over $2,473 from the plan for the remainder of his life.

During the marriage, Jenny earned a bachelor's degree in business administration, the cost of which was fully paid for by the time of separation. She had previously attempted to become a certified public accountant (CPA) but did not complete the examination process. For long periods of time during the marriage, including the time she spent earning her bachelor's degree and studying for the CPA exams, Jenny did not work outside the home. After Jenny ceased pursuing a career as a CPA, she took up employment at a nursing facility where she continued to work at the time of trial.

A vocational expert retained by Jenny testified that Jenny had little opportunity for advancement at her current job. But due to her education and her age, the expert opined that the security of Jenny's current employment was her best career option goingforward.[2] Jenny had $5,243 in a single retirement account at the time of trial.

The McMasters have three adult children who live independently. In addition to the loans for Tim's master's degree, the parties held an additional $73,058 in student loan debt from their children's education. $63,645 of this debt was in Jenny's name alone.

The McMasters owned a home situated on a 10-acre property in Chattaroy, Washington. They owed $163,123 on two mortgages at the time of trial. Two appraisals were conducted on the property. The first appraisal valued the property at $355,000. The second appraisal valued the property at $340,000. The individual who conducted the second appraisal testified at trial and explained the discrepancy by noting the first appraisal used less comparable properties. Jenny testified that she believed the property was worth more than $340,000.

The McMasters also owned three cars, a boat, a tractor, and a recreational vehicle (RV). They owed $12,178 in auto loans at the time of dissolution. Besides the student

---

[2] While cross-examining the expert witness, Tim explored the option of Jenny obtaining a second job. The court clarified a question on this topic as well.

loans, mortgages, and auto loans, the McMasters had incurred substantial medical debts prior to their divorce, including one which had gone to collection.

Tim petitioned for dissolution of the marriage during March 2018, In May, a Spokane County Superior Court Commissioner entered a temporary order granting Tim use of the marital home, providing $2,100 in maintenance to Jenny every month, and ordering the parties to equally share payments on the children's rent and student loans.[3] At the time of trial, Jenny resided in a one-bedroom apartment with use of one of the couple's vehicles.

Tim testified at trial that he had trouble paying his bills post-separation. He could not afford to license or insure one of his vehicles, canceled his cable and internet services, and ceased making voluntary contributions to his retirement accounts. Tim was forced to take out a line of credit, incur substantial credit card debt, and cash in his vacation time from work to pay his bills and attorney fees. He attempted to deal with his financial crunch by artificially increasing his tax exemptions, resulting in a tax debt of $3,011 which he was forced to use his line of credit to pay. Between separation and trial, Tim incurred over $28,000 in credit card and line of credit debt.

---

[3] Jenny would allege at trial that Tim refused to pay a fair share of his children's student loans after this order was entered.

Tim's financial declaration filed prior to the commencement of trial indicated hehad a net monthly income of $6,739.35[4] versus monthly expenses totaling $6,500.00,[5] not including Jenny's $2,100.00 in monthly spousal maintenance. Jenny's financial declaration indicated she had a net monthly income of $2,746.78, not including her $2,100.00 in spousal maintenance, and $5,422.28 in monthly expenses. $849.80 of her monthly expenses came from payments toward her children's student loans held in her name, and another $400.00 of monthly expenses came from $15,103.15 in credit card debt. Like Tim, Jenny reported incurring $40,000.00 of debt in attorney fees and legal costs.

In briefing submitted prior to trial, Jenny asked for an award of attorney fees and costs under RCW 26.09.140, conclusively asserting that she did not have an ability to pay her fees but Tim did. She also contended she was entitled to fees due to Tim's intransigence in refusing to provide discovery responses regarding a brewing operation owned by Tim and Tim's cousin.

---

[4] Tim had a gross monthly income of $9,574.66 before taxes, deductions, and retirement contributions. His income figures reflected his monthly salary from his job, and no other sources of income. Jenny and an expert witness secured by her alleged it also did not include his job's per diem pay.

[5] These expenses would include $100.00 spent per month on eating meals out, a habit Tim testified he picked up after separation from Jenny.

A bench trial commenced on July 9, 2019. At the outset of trial Jenny stated she expected the trial to last three days. The court subsequently addressed both parties and expressed a desire to expedite trial so that it would be focused on areas of true disagreement. The court emphasized its goal was to get the parties a decision, thus it was hoped the parties could agree on certain things, "rather than plow fields that don't need to be plowed." Report of Proceedings (RP) (July 9, 2019) at 12. Later on, during the presentation of witnesses, the trial court made comments indicating that the testimony could be accelerated. Jenny and her attorney discussed the matter and agreed to a shortened trial schedule.

Trial took place on July 9 and 10, 2019, and the trial court issued an oral ruling on July 26. In explaining its ruling, the court recognized the parties' had a long-term marriage and expressed the goal of placing them in roughly equal financial positions from that point forward. Before discussing the property distribution, the court recited the statutory factors of RCW 26.09.080 (Disposition of property and liabilities – Factors).

The court provided Tim $450,422 in community assets, including the marital home (valued at $340,000 pursuant to the second appraisal), the boat, the RV, and two cars. Jenny was provided $136,751 in community assets, which mostly came from the value of one of the cars and one of Tim's retirement accounts. The court assigned Tim $248,483 in

community debt for a total net award of $201,939, and Jenny $71,984 in community debt

for a total net award of $64,767. The debt awarded to Jenny included $63,645 of student

loan debt for her daughter's education.

The court then stated a desire to award Jenny roughly 65 percent of community

assets, or $173,359, in lieu of additional maintenance. To accomplish this, it ordered Tim

to make an equalization payment to Jenny of $108,592. The court determined that Tim's

monthly maintenance payments would be reduced to $1,000, and would stop at the end of

2019.

The presentment hearing occurred in September. The parties disputed some of the

terms of the proposed findings. The court concluded the hearing by stating it would

review the parties' submission and issue its own decree. Written findings of fact and

conclusions of law were entered on October 21, 2019. The findings recognized the parties

had a long-term marriage and that the court could equalize the estate through

"maintenance, a disproportionate property division or both." Clerk's Papers (CP) at 442.

The court determined "a disproportionate property award is the most viable method of

equalizing the marital estate." *Id*. The court found neither party had the ability to pay

attorney fees from their earnings. Thus, it denied Jenny's request for fees.

Jenny now appeals the trial court's findings of fact and conclusions of law and the final divorce decree.

ANALYSIS

*Judicial bias*

Jenny claims the trial court violated her constitutional right to due process by deciding the case before the close of the evidence. This argument was not preserved at trial. Therefore, Jenny's right to review turns on whether she can prove a manifest constitutional error pursuant to RAP 2.5(a). She cannot.

A manifest error is one that is (1) manifest and (2) "truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). To be manifest, an error must be "obvious on the record." *Id*. at 99-100. Here, there is no obvious error. There is no evidence the trial court decided the parties' case before hearing all the evidence. The court's suggestion that the parties efficiently present the evidence is indicative of ordinary trial management. The court's comments were particularly appropriate in this case, as most of the parties' testimony consisted of reading from written exhibits. Jenny is not entitled to relief based on alleged constitutional error.[6]

---

[6] To the extent Jenny claims the trial court violated the appearance of fairness doctrine, that claim is not reviewable for the first time on appeal. *State v. Blizzard*, 195 Wn. App. 717, 725-26, 381 P.3d 1241 (2016).

No. 37176-0-III
*In re Marriage of McMaster*

*Maintenance*

Jenny's primary appellate argument pertains to maintenance.[7] We review a maintenance decision for manifest abuse of discretion. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). This is a very deferential standard. We will not substitute our judgment for that of the trial judge. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Rather, our analysis asks whether the trial court's disposition was based on "'untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion.'" *In re Marriage of Sheffer*, 60 Wn. App. 51, 53, 802 P.2d 817 (1990) (quoting *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990)).[8]

Maintenance is governed by RCW 26.09.090. Under this statute, a trial court may award maintenance "in such amounts and for such periods of time as the court deems just." Maintenance should not be awarded as a matter of right. *In re Marriage of Luckey*, 73 Wn. App. 208, 209, 868 P.2d 189 (1994). Maintenance is a flexible tool, typically used

---

[7] Jenny also references the trial court's property distribution, but that argument is part of her argument regarding maintenance.

[8] We reject Jenny's argument that the trial court erred by utilizing Tim's proposed findings of fact. The presentment of proposed findings of fact is a commonplace practice explicitly authorized by the superior court civil rules. *See* CR 52. It is no error for a court to adopt proposed findings in its final findings of fact and conclusions of law.

to afford the recipient time necessary to achieve financial independence. *See* RCW

26.09.090(1)(b). Maintenance awards are usually temporary. *See In re Marriage of*

*Valente*, 179 Wn. App. 817, 822, 320 P.3d 115 (2014). When the requesting spouse

"has the ability to earn a living," long-term maintenance is unwarranted. *Hogberg v.*

*Hogberg*, 64 Wn.2d 617, 619, 393 P.2d 291 (1964).

Here, the trial court did not abuse its discretion in terminating Jenny's

maintenance. The trial testimony showed Jenny did not require a period of time to acquire

marketable job skills. Jenny is in good health, has a college degree, and was working full

time. She presented testimony that she is currently employed at her maximum potential.

An award of maintenance would not help Jenny get on her feet. One of the primary

objectives of maintenance was not present in this case.

Jenny correctly points out that the parties have very disparate incomes. Need

and ability to pay are relevant statutory considerations for spousal maintenance.

RCW 26.09.090(a), (f). But they do not require a particular result. Here, the trial court

took the parties' disparate resources into account by awarding Jenny 65 percent of the

community property. This was an appropriate exercise of discretion. *See In re Marriage*

*of Estes*, 84 Wn. App. 586, 593, 929 P.2d 500 (1997) ("The trial court may properly

consider the property division when determining maintenance."); RCW 26.090(1)(a)

(requesting party's need is assessed in light of apportioned property).

Jenny claims that because she and Tim had a long-term marriage, the trial court

was required to place the parties in roughly equal positions for the rest of their lives and

apportion Tim's future wages. We disagree. Future earning potential is not a marital asset

that can be divided. *In re Marriage of Leland*, 69 Wn. App. 57, 847 P.2d 518 (1993); *In

re Marriage of Anglin*, 52 Wn. App. 317, 759 P.2d 1224 (1988). Still, future earnings are

something the court can and should consider at dissolution. In addition, it is permissible

for the trial court to try to place the parties to a long-term marriage on equal footing

moving forward. But no particular distribution is required. *In re Marriage of Kaplan*,

4 Wn. App. 2d 466, 475-76, 421 P.3d 1046 (2018). A spouse does not have the right to a

lien on the other spouse's potential future earnings. *Hogberg*, 64 Wn.2d at 619. Here, the

trial court considered the length of the parties' marriage and disparate earning potential in

issuing in allocating the parties' property. There was no abuse of discretion.

The overall record shows the trial court considered the statutory factors relevant to

maintenance and made a decision that it deemed just under the circumstances. Reasonable

minds can differ over whether Jenny should have been awarded additional maintenance.

But that does not mean Jenny is entitled to relief. We will not reweigh the evidence or the

various statutory factors relevant to maintenance. Instead, the trial court's decision must

be upheld.

*Findings of fact*

Jenny assigns error to the trial court's findings of fact, claiming they undermine

the maintenance decision. Our review is deferential to the trial court. The only

requirement on appeal is that a trial court's findings be supported by substantial evidence.

*In re Marriage of Bernard*, 165 Wn.2d 895, 903, 204 P.3d 907 (2009). "Substantial

evidence is evidence sufficient to persuade a fairminded person of the truth of the

declared premise." *In re Marriage of Hall*, 103 Wn.2d 236, 246, 692 P.2d 175 (1984). We

review the various findings referenced by Jenny in turn.

*The parties "different values"*: In its oral ruling, the court commented the

"parties have different values." RP (Jul. 26, 2019) at 392. This appears to have been a

reference to the parties' attitudes towards recreation and spending. Tim testified that his

only social activities included his home brewing operation and occasionally eating out

with friends and family. Meanwhile, the evidence was that Jenny enjoyed an active social

life. Substantial evidence justified the court's comments.

*The lifestyle that "cannot be afforded"*: The trial court's written findings

include the comment that the court "cannot create a lifestyle which cannot be afforded."

CP at 442. There was plenty of evidence presented at trial that the parties had been living beyond their means. This finding is supported by substantial evidence.

*Valuation of marital property*: The trial court's decision to adopt the lower of the two appraised property values is supported by substantial evidence. There was no evidence the property had decreased in value after the separation. The difference between the two appraisals had to do with methodology. It was within the trial court's discretion to accept one method over another.[9]

*Tim's dining practices*: Jenny claims the trial court erroneously noted in its oral findings that Tim was dining out less, post separation. Jenny is correct that Tim's testimony actually indicates he began dining out more after separation than before. Nevertheless, this comment was not an important part of the trial court's analysis and does not justify altering the trial court's final disposition.

*The brewery*: Jenny suggests the trial court erred by failing to assign a value to the brewery operated by Tim and his cousin. However, the evidence at trial was that the brewery was a hobby and did not generate any income. The court's decision not to assign any value to the brewery was appropriate.

---

[9] Jenny proffers that Tim recently sold the marital home for almost $600,000, thus arguing he was awarded a disproportionate share of the marital estate. This factual proffer is outside the record on review and inappropriate on appeal.

*Miscellaneous contentions regarding the trial court's disposition*

Jenny claims the trial court's final disposition was infected by a series of inappropriate considerations. We disagree. We note that the statutory standards for property disposition and maintenance are not exclusive. *See* RCW 26.09.080-.090. Thus, to the extent the court considered additional issues such as the parties' post-separation lifestyles and debt, it was not inappropriate. Jenny asserts that the trial court's disposition was based on the unwarranted assumptions that she did not want the marital home and should take on a second job. These claims are pure speculation and do not merit appellate relief.

Jenny also asserts that the trial court may have failed to take into account certain facts. She claims that the court may have forgotten about Tim's per diem income, his cashed out vacation time, his state retirement account, the student loan debt for the parties' daughter, Jenny's limited earning potential, and her monthly expenses. Again, Jenny's claims are pure speculation. This was a relatively straightforward dissolution. There is no indication that the court was unaware of critical pieces of information. The trial court was not required to make findings on each and every argument or piece of evidence. Jenny's claims do not warrant relief.

Finally, Jenny argues the trial court failed to include some of its oral findings into its written disposition. Jenny fails to cite any authority suggesting this was error. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We decline relief.

*Trial court's ruling on attorney fees and costs*

Jenny contends the trial court erred by declining to award her attorney fees and costs. She argues Tim had the ability to pay and that his intransigence during pretrial discovery warrants an award. Again we review for abuse of discretion. *In re Marriage of Obaidi*, 154 Wn. App. 609, 617, 226 P.3d 787 (2010). Again, Jenny has not demonstrated she is entitled to relief.

RCW 26.09.140 states that "after considering the financial resources of both parties [a court] may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees." In ruling on a request for attorney fees under RCW 26.09.140, "the court must balance the needs of the one party against the other party's ability to pay." *In re Marriage of Coons*, 53 Wn. App. 721, 722, 770 P.2d 653 (1989). It has been found to be an abuse of discretion to award attorney fees to a spouse who received a majority of the

15

parties' total assets when such an award of fees would be an onerous financial burden. *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989).

The trial court's attorney fee award was justified by the evidence that Tim had trouble meeting monthly expenses and by the fact that Jenny was awarded a disproportionate size of the marital estate. While intransigence may be a ground for awarding attorney fees under RCW 26.09.140, the record on review does not support Jenny's claim that Tim engaged in intransigence.

## CONCLUSION

The trial court's dissolution disposition is affirmed. Jenny's request for appellate attorney fees is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.